## STATE OF MISSOURI, Respondent, v. JAMES E. KITCHEN, Appellant.

Springfield Court of Appeals, December 6, 1919.

1. **HIGHWAYS: Abandonment of Public Road not Shown by Order for New Road.** In prosecution for obstructing road in violation of Revised Statute 1909, section 10533, that county court had ordered the establishment of new road in close proximity to road defendant had obstructed, *held* not sufficient to show that old road had been abandoned at point of obstruction, especially where there was no order therefor, and where public continued to use, and overseers of district continued to work, old road.

2. ————: **What Constitutes "Legally Established Road" "for Such Period."** Under Revised Statutes 1909, section 10446, as amended by Laws 1913, p. 658, sec. 15, and Laws 1917, p. 450, sec. 13, providing that roads "used as such by the public for ten years continuously and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads," road so used for such period and upon which sufficient public money or labor is expended "for such period" to keep it in substantial repair and condition for public use is a legally established road, though public money and labor have not been expended each and every year during such period.

Appeal from Phelps County Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*F. H. Farris* and *J. J. Crites* for appellant.

(1) To establish a public highway by prescription under our statute, the road must have been used for ten consecutive years by the public as a highway, and there must have been public money or labor expended on it for such period, that is, for ten consecutive years. R. S. 1909, vol. 3, sec. 10446. (2) Under the testimony of Clift, who assisted in cutting out this road, it was opened up for the first time in 1879. That being true no road was established by prescription under public user prior

of the Act of 1887. Strong v. Sperling, 205 S. W. 266. (3) The evidence of the expenditure of public money and labor upon this road is very similar to that which this court had its attention recently called, and in which case the court very positively declared that although the testimony shows the use of the road for the ten years, there was no evidence sufficient of the expenditure of public money or labor to vest the title in the county and make it a public highway under section 10466, R. S. 1909. Copeland v. Pyrtle, 179 S. W. 992.

*J. A. Watson* and *Holmes & Holmes* for respondent.

Respondent's motion to dismiss the appeal should be sustained. Session Acts 1913, sec. 5313a, page 226; R. S. 1909, sec. 5308; State v. Piersol, 210 S. W. 58; State v. Bowman, 213 S. W. 97; State v. Conners, 258 Mo. 330. 2. The instructions given by the Court correctly declare the law.

BRADLEY, J.—The prosecuting attorney of Phelps county proceeded by information against the defendant for the violation of section 10533, Revised Statutes 1909. It is charged that the defendant did unlawfully, wilfully and knowingly obstruct a certain public road leading from Edgar Springs to Relfe and known as the Edgar Springs and Newburg road in the said county of Phelps by fencing and building a fence of posts, wire and a gate across and upon the right of way of said public road to the great hindrance, annoyance and inconvenience of the public.

The proceedings were instituted in a justice of the peace court and after trial and conviction in that court defendant appealed to the circuit court. There the defendant was again convicted and prosecutes his appeal to this court.

The State has filed a motion to dismiss this appeal on the ground that defendant did not perfect the same within six months as is provided in section 5313a (Laws

State v. Kitchen.

of 1913, page 226.) Without setting out the different steps taken in perfecting this appeal suffice it to say that there is no sufficient showing here to justify the dis-missal of this appeal, and the motion to dismiss is over-ruled.

The record discloses that the portion of the road which the defendant is charged to have obstructed was cut out or opened up in 1878 or 1879 and has been used continuously since that time as a public highway. There is no claim that the road in question was ever established by the county court as a public highway, or was ever dedicated as such by the owner. If the road at the time defendant is alleged to have obstructed the same had the *status* of a public highway, it acquired such *status* by user by the general public and the expenditure of public money or labor thereon for the necessary period provided for by law to give such road the *status* of a public highway.

Prior to the year of 1879 in order to establish a public road by prescription the same must have been traveled as a public highway and openly and notoriously used as such for the same period of time as was required to give title to land by open, notorious and adverse possession under the Statute of Limitations. In 1879 (R. S. 1879, sec. 6987) an act was passed provid- and a plat thereof made and filed with the clerk of ing that all roads opened by order of the county court the county court, and having been used as a public highway by the traveling public for the period of ten years or more should be deemed legally established public roads notwithstanding any irregularities in the proceedings had to establish and open the same. land was left unchanged across his lands although the This act did not affect the road in question, because there is no contention that there was any attempt made by the county court to establish this road in 1879 or prior thereto. This section was carried into the revision of the road law in 1883 without change. [Laws 1883, p. 170, sec. 58.] In 1887 there was a proviso added to this section which provided that in *all other*

*cases* no lapse of time would divest the owner of his title unless in addition to the use of the road by the public for the period of ten consecutive years there should have been public money or labor expended on such road for such period. [Laws 1887, p. 257, sec. 57.]

Ten years had not elapsed from the opening of the road in question until the enactment of 1887 went into force and effect. The statute of 1887 was carried into the revision of 1889 without change, (Sec. 7847, R. S. 1889) and so remained until 1909, when it was modified as to phraseology and made to read as follows: "All roads in this State that have been opened by any order of the county court, and have been used as a public highway by the traveling public for a period of ten years or more, and roads that have been used by the public for ten years consecutively and upon which there shall have been public money or labor expended for such period, shall be deemed legally opened and established county roads, notwithstanding there may have been irregularities in the proceedings had to establish and open such roads; and nonuser by the public for a period of ten years continuously of any public road shall be deemed an abandonment of the same." [Laws 1909, p. 733, sec. 15; R. S. 1909, sec. 10446.] This section of the 1909 statutes was carried into the revision of the road law in 1913 without change. [Laws 1913, p. 658, sec. 15.] In 1917, this section was again modified to read as follows: "All roads in this State that have been established by any order of the county court, and have been used as public highways for a period of ten years or more, shall be deemed legally established public roads; and all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; and nonuser by the public for ten years continuously of any public road shall be deemed an abandonment and vacation of the same." [Laws 1917, p. 450, sec. 13.]

There has been no substantial change in the law since the adding of the proviso in 1887. The proviso as

such was dropped in 1909, but its substance was carried into the body of the section by requiring the road to have been used by the public for *ten years consecutively* and the expenditure of public money or labor thereon *for such period*. The Act of 1917, while it modified the phraseology of the section, did not affect the meaning. There the word *continuously* is used instead of *consecutively* and the phrase *for such period* is retained.

The defendant relies upon two grounds for reversal. First: That the evidence did not justify the submission to the jury of the question that there had been public money or labor expended upon the road in question for the period required by the statute; second:. that the court erred in giving the instruction hereinafter set out.

The record discloses that the road had been continuously used by the general public since it was cut out and opened up in 1878 or 1879. The only question raised by defendant's contention in view of the state of the law is whether there has been such expenditure of public money or labor on the road since 1887 as to meet the terms and conditions of the law relative thereto. We might say here that in 1907 there was a petition circulated in the neighborhood and signed by the requisite number of petitioners for a public road alongside of the road in question, and on the line where the road no doubt should be. It seems that when the road in question was first cut out that it was located a short distance west of the line. The petition mentioned did not seek to *change* the location of the public road, but sought to establish a new road. The county court subsequently in 1908 acted upon this petition, and ordered the road petitioned for, established, and directed that the same be opened. For some reason the road petitioned for and ordered established was not in fact opened, especially where it crossed defendant's lands. The old road, wholly on defendant's land was left unchanged across his lands although the location of the new road along this particular stretch was some distance east of the old road, and on the line. We might say in passing that a hedge fence marked the east line of defendant's land, and the *new* road petitioned

for was to be on the line occupied by this hedge, fifteen feet on the land now owned by defendant, and fifteen feet on the land of his neighbor to the east. Defendant makes the contention that limitations should begin at the time the county court established the *new* road. If this contention were upheld defendant could not be convicted, because the ten years had not expired from the time of the establishment of the new road until the defendant fenced the old road, where it crossed his land, in 1918. The road which defendant fenced is wholly on his land and only a short distance from the line and from the place where the county court ordered the new road opened in 1908, and no doubt the road should be on the line as ordered, but the mere fact that the county court ordered established a new road in close proximity to th old one would not be sufficient to show that the old road was abandoned especially in the absence of an order, and also the fact that the new road was not opened at this place and the further fact that the public continued to use the old road, and the overseers of the district continued to work the same.

The defendant, in view of what we have said relative to the establishment of the new road in 1908 by the county court, must stand or fall by the use of the road obstructed, and the expenditure of public money or labor thereon from 1887. There is no question about its use by the public for the requisite period, and the only question is as to the expenditure of public money or labor thereon for the requisite period. The record does not show conclusively that public money or labor had been expended *each* and *every* year for any consecutive ten years since 1887, but it is abundantly shown that public money and labor have been expended at such times, and at such places along and on the road as a whole, as was deemed necessary by the overseers in charge in order to keep the road as a whole in substantial repair for public use and travel. Defendant concedes that it is not necessary to show the expenditure of public money or labor upon the *identical* spot fenced for each year of the statutory period; but contends that public money *or*

labor should have been expended each year on the obstructed portion or in such proximity thereto that it could be designated and known as public work upon this public highway.

The trial court instructed the jury on this point as follows: ''If the road in question had prior to the obstruction, if you find it was obstructed, been continuously used by the public for a period of more than ten consecutive years, and that there had been public money or labor expended thereon during all of such period then the same thereby became a public road by prescription. It is not necessary in order for you to find that it was a public road by prescription, that you must find that public money or labor was expended thereon every year during such time, but if it was regarded by the overseers as a public road, and at the point of the said obstruction, if any, public money or labor was expended thereon, from time to time, as the same might be required and necessary, and for the whole period above set forth, this would be sufficient to authorize a finding that public labor and money had been expended thereon during such period.''

This instruction is in harmony with the law as written by the Kansas City Court of Appeals in State v. Macy, 72 Mo. App. l. c. 431, 432. In the construction of the expression *such period* lies the meat of the whole case. In State v. Macy, supra, it is said: ''While it is true that the expression is used in the text books and decisions that the adverse user must be continuous and uninterrupted, yet that does not mean that some part of the public shall be in hourly or daily use of it. So, of course, neither does the legislative expression that there shall be money or labor expended for the period of limitation, mean that the expenditure of labor or money shall be constant. The statute means that the expenditure must have been begun and continued from time to time for the period of limitation, as might be considered necessary or expedient by those in authority. The evidence in this case shows that the road was worked

at different times, beginning back about forty years, and was sufficient to satisfy the statute.''

This is the only case that we find in this State directly construing that feature of the statute with reference to the period of time, public money or labor must be expended upon a road in order to give such road the *status* of a public highway. There are some decisions in other jurisdictions which are somewhat to the contrary, but the construction given in our own State is sound and reasonable. Any other construction would lead to confusion and uncertainty with reference to the public highways of the State that have been established by prescription. If it must be shown that public money or labor has been expended upon any particular highway for each and every year of the ten consecutive years, then a highway would never be established by user, and the expenditure of public money or labor thereon unless the expenditure was for each and every year whether the road needed it or not. The statute says that public money or labor should be expended on such road *for such period*. We are clearly of the opinion that all that is required by this statute with reference to the expenditure of public money or labor is that for the ten consecutive years of use, sufficient public money or labor should be expended on the road to keep it in substantial repair and condition for the public use and public travel.

What we have said disposes of defendant's contentions. We find no error in this record. Judgment is therefore affirmed. *Sturgis, P. J.,* and *Farrington, J.,* concur.